J-S28002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                       :            PENNSYLVANIA
                                       :
                     v.                     :
                                       :
                                       :
THOMAS ALLEN MARKOWSKI     :
                                       :
             Appellant         :    No. 1536 MDA 2019

Appeal from the Judgment of Sentence Entered August 26, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005511-2016

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                 **FILED JULY 13, 2020**

     Thomas Allen Markowski appeals from the August 26, 2019 judgment of sentence of twenty-four-and-one-half to fifty years of imprisonment following his convictions for two counts each of aggravated assault and robbery, and one count each of attempted murder of a law enforcement officer of the first degree, theft by unlawful taking, possession of a weapon, using an offensive weapon, recklessly endangering another person, and assault of law enforcement officer.  We affirm.

     The following facts are relevant to our review.  On April 7, 2016, at the Wal-Mart in Shrewsbury, Pennsylvania, two pharmacy employees, Terry White and Stuart Wiener, observed Appellant pulling up to the pharmacy drop-off window in a motorized wheelchair or cart.  *See* N.T. Trial, 5/20-21/19, at 5. Appellant sat in the motorized cart for approximately three minutes before Ms. White approached him and asked if he needed assistance.  *Id*. at 11.

Appellant demanded fentanyl patches and told Ms. White that he had a firearm. *Id*. Appellant was carrying a sawed-off shotgun that he had modified at his home and concealed in a plastic bag.

Ms. White returned to the back of the pharmacy and told the pharmacist on duty to get the fentanyl patches. Mr. Wiener escorted customers out of the pharmacy department and dialed 9-1-1. *Id*. at 22. Ms. White remembered seeing the gun at some point. She retrieved the fentanyl patches from the pharmacist, delivered them to Appellant at the drop-off window of the pharmacy, and directed him to leave. *Id*. at 16. He stood up from the motorized cart and walked toward the front door of the store. Mr. Wiener went outside to meet police who had been dispatched to the scene.

Pennsylvania State Trooper Darrio Parham was in uniform at the Wal-Mart purchasing food when the call came in. As he responded to the call, Mr. Weiner hailed him and they proceeded towards the pharmacy entrance of the store. Appellant exited with the fentanyl patches, carrying the bag containing his concealed shotgun. *Id*. Mr. Wiener testified that Appellant "told the officer that he had a gun, and he would shoot him, and the officer pulled his weapon." *Id*. at 23.

Appellant pointed the sawed-off shotgun at Trooper Parham, who ordered Appellant to drop his weapon. When Appellant failed to comply, Trooper Parham drew his service pistol. *Id*. Appellant aimed his shotgun at Trooper Parham from point-blank range, and Trooper Parham slapped the shotgun away. *Id*. at 58. Appellant regained control of the shotgun and once

again pointed it at the chest area of the trooper's body. *Id*. at 57. As Trooper Parham grasped the weapon to move it aside a second time, Appellant fired the gun. *Id*. Trooper Parham returned fire, striking Appellant in the chest and ending the altercation. *Id*. at 59. A subsequent investigation conducted by police revealed that two rounds remained in Appellant's gun after the shot was fired, and that Appellant had an additional five shotgun shells in his pockets. *Id*. at 39, 43.

Appellant gave a recorded interview to police after he was medically cleared during which he admitted that, in anticipation of robbing the Wal-Mart, he modified the shotgun so that it was easier to conceal. He told police that he loaded the weapon in the pharmacy because they were taking too long to retrieve the fentanyl. Appellant confirmed that he knew Trooper Parham, who was in uniform, was a law enforcement officer. *Id*. at 45. He acknowledged that the trooper ordered him to drop the weapon. *Id*. Appellant told police that he pulled the trigger because he panicked. *Id*. at 46.

Appellant was charged with attempted murder and numerous other offenses.[1] Following a non-jury trial on May 20-21, 2019, Appellant was found guilty of all charges. He filed a motion for reconsideration, which was denied. He was sentenced on August 29, 2019, and he orally moved at that time for arrest of judgment, which was denied.

---

[1] Prior to trial, Appellant underwent a competency evaluation and was found competent to stand trial.

Appellant filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925. Appellant presents one issue for our consideration:

Whether the trial court abused its discretion when it denied [Appellant's] request for reconsideration (motion for arrest of judgment) on August 26, 2019, as there was insufficient evidence to find [him] guilty of assault of [a] law enforcement officer; attempted murder of a law enforcement officer; and aggravated assault; where the evidence showed [that Appellant] did not intend to fire at the trooper and that the gun accidentally discharged?

Appellant's brief at 6 (cleaned up).

Our standard of review for a challenge to the sufficiency of the evidence is well settled:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Williams*, 176 A.3d 298, 305–06 (Pa.Super. 2017) (citations and quotation marks omitted).

- 4 -

Appellant confines his sufficiency challenges to his convictions for attempted murder of a law enforcement officer, assault of a law enforcement officer, and aggravated assault. Accordingly, we consider the elements of those crimes. A criminal attempt occurs when a person, "with intent to commit a specific crime, does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "A person commits murder of a law enforcement officer of the first degree who intentionally kills a law enforcement officer while in the performance of duty knowing the victim is a law enforcement officer." 18 Pa.C.S. § 2507.

In the case of attempted murder, "a person may be convicted if he takes a substantial step toward the commission of a killing with the specific intent in mind to commit such an act." *Commonwealth v. Dale*, 836 A.2d 150, 153 (Pa.Super. 2003) (citations omitted). The intent to kill must be shown. *Commonwealth v. Griffin*, 456 A.2d 171, 178 (Pa.Super. 1983). The firing of a bullet in the general area of vital organs can alone be sufficient to prove specific intent to kill. *See Commonwealth v. Manley*, 985 A.2d 256, 272 (Pa.Super. 2009). As this Court held in *Commonwealth v. Mapp*, 335 A.2d 779, 781 (Pa.Super. 1975), an attempted murder is completed by the discharge of a weapon at a person with intent to kill, even if no injury results.

Assault of a law enforcement officer is committed when a person attempts to cause or intentionally or knowingly causes bodily injury to a law enforcement officer, while in the performance of duty and with knowledge that

- 5 -

the victim is a law enforcement officer, by discharging a firearm. 18 Pa.C.S. § 2702.1(a). This Court has held that criminal attempt under § 2702.1(a) requires a showing of some act accompanied by an intent to inflict bodily injury upon a law enforcement officer by discharging a firearm. *See Commonwealth v Landis*, 48 A.3d 432 (Pa.Super. 2012).

One commits aggravated assault when one attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to certain enumerated persons, including state law enforcement officers, while in the performance of duty. *See* 18 Pa.C.S. § 2702(a)(2), (c)(18). Additionally, one commits aggravated assault when one attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon. *See* 18 Pa.C.S. § 2702(a)(4).

> Relevant to the intent element of these crimes, this Court has explained:
>
> An intent is a subjective frame of mind, it is of necessity difficult of direct proof. We must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to his eyes. Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances.

*Commonwealth v. Alford*, 880 A.2d 666, 671 (Pa.Super. 2005) (cleaned up). Additionally, our Supreme Court indicated in *Commonwealth v. Meredith*, 416 A.2d 481 (Pa. 1980), "[w]here the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct." *Id*. at 485.

Appellant contends that the Commonwealth failed to prove the requisite intent for each of the three charges listed above. Appellant's brief at 11. In support of his position, he points to his testimony at trial that he had no intent to harm or kill Trooper Parham. He initially stated that the weapon discharged accidentally when he was attempting to hand the gun to Trooper Parham. N.T. Trial, 5/20-21/19, at 79. He later testified that it was his intention to simply walk out, but that he froze in the moment and did not know what to do. *Id*. at 83. Appellant argues further that video surveillance footage and eyewitness testimony are inconclusive as to whether he pulled the trigger of the shotgun. *See* Appellant's brief at 11.

Appellant's argument disregards our standard of review. We must view the evidence in the light most favorable to the Commonwealth, not Appellant. *See Williams*, *supra* at 305-06. The trial court, sitting as factfinder, found that Appellant intended to kill Trooper Parham, inferring such intent from Appellant's conduct of walking toward the Trooper while aiming the barrel of the shotgun at his mid-section, with his finger on the trigger and the safety off. The court also found that Appellant shot the gun at the trooper, and "but for Trooper Parham quickly diverting the shotgun away from himself, Appellant's shot would have found its mark." Trial Court Opinion, 11/15/19, at 11. Hence, the factfinder disbelieved Appellant's testimony that the shotgun accidentally discharged.

As detailed in our recitation of the evidence above, the trial court's finding is supported by the record when viewing the evidence in the light most favorable to the Commonwealth, as we must. This evidence was sufficient to sustain Appellant's convictions. Specifically, the evidence established the intent-to-kill element of his attempted murder conviction, as Appellant entered the Wal-Mart intending to rob the pharmacy, armed with a shotgun that he altered specifically for that purpose. Upon exiting the store with fentanyl, Appellant "told the officer that he had a gun, and he would shoot him, and the officer pulled his weapon." *Id*. at 23. Rather than obeying Trooper Parham's command to drop the weapon, Appellant moved toward the trooper with the partially-concealed deadly weapon pointed at Trooper Parham's mid-section. The safety was off and the weapon was loaded with a slug chambered, evidence that Appellant intended to harm or kill the trooper. Appellant pointed the gun at the trooper's mid-section, a vital part of the body, and the gun discharged as the trooper pushed it away.

The assault and aggravated assault convictions were based upon the attempt to cause injury upon a police officer, or attempt to cause serious bodily injury respectively. This Court has held that merely pointing a loaded firearm at an individual constitutes circumstantial evidence to support a conviction of aggravated assault. *Commonwealth v. Miller*, 217 A.3d 1254 (Pa.Super. 2019). *See also Commonwealth v. Payne*, 868 A.2d 1257 (Pa.Super. 2005) (holding the intentional act of pointing the gun and aiming

it at a vital part of the human body creates the presumption of malice for the purposes of prosecution for aggravated assault). The discharge of the weapon in the present case only serves as additional circumstantial evidence that Appellant intended to harm or kill Trooper Parham.

Furthermore, the evidence sufficiently established that Appellant actually pulled the trigger. Appellant's own testimony confirmed that as he approached Trooper Parham, he had his finger on the trigger and his weapon pointed at the trooper. *See* N.T. Trial, 5/20-21/19, at 79. The trial court found that Appellant discharged the firearm. This Court may not alter a finding of fact made by the trial court unless no probability of fact can be drawn from the circumstances. ***Commonwealth v. Tejada***, 107 A.3d 788, 792 (Pa.Super. 2015).

Finding no merit to Appellant's sufficiency challenges, we affirm his judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/13/2020

- 9 -